May it please the Court, my name is Valerie Bateman, along with my co-counsel Heather Benjamin and our law firm, New South Law Firm. We represent the plaintiff appellants in this matter, Patsy Talley and other individuals similarly situated to her. In this case, the underlying facts are important. Ms. Talley and the other individuals were receiving government benefits. Ms. Talley and Ms. Glenn, or her husband, were receiving retirement benefits. Ms. McCracken and Ms. Stickle were receiving disability benefits. Everything was fine. They were going along receiving these benefits based on the state's representation to them of the amounts that they were owed until one day they received a letter in the mail. And that letter said, you owe us possibly tens or thousands of dollars in overpayments. And that's when this case began. Are there other plaintiffs in this case besides Ms. Talley? I'm sorry, Your Honor. Are there other plaintiffs in this case besides Ms. Talley? Ms. Talley was the named plaintiff in the original complaint. And then a motion to amend the complaint was filed to add Ms. McCracken, Ms. Stickle, and Ms. Glenn. That motion was denied, correct? That motion was denied in conjunction with a final order in this case in which the court dismissed the remaining issue in the complaint, the procedural due process issue on a motion for judgment on the pleadings. Ms. Talley was informed that she owed $86,000 in overpayments. In the joint appendix, the letter to her appears on page 61. And it states your overpayment balance as of 3-19-2019 is $86,173.93. Effective with your April 2019 payment, our office will begin monthly deductions of $926.35 to be applied to the overpayment balance. This is key. If we may be of further assistance, please contact us at the address or telephone number listed below. So what does your client say that she owes, if anything? I'm sorry, Your Honor. What does your client say she owes, if anything? My client says she's not sure what she owes, but she has not had an opportunity to contest the amount, and she was not provided any process. She was never offered an opportunity to be heard on the amount before the state started taking these amounts out of her check. Can I follow up on that? Because I wanted to ask about your procedural due process claim. So it's not, she's not contesting, at least in the procedural due process claim, the collection of the money itself. It's the collection of the money without process. Is that right? Yes, Your Honor. It's the collection, it's the lack of due process prior to just taking the money from her. And so then she had an administrative hearing, is that right, later, once they started taking the money out? She did. And received process there, and you're not challenging that process, is that right? Well, we're challenging that process insofar as it's a post-deprivation hearing, at which we could not raise any constitutional issues. And we could not raise the fact that she had not gotten any pre-deprivation due process. Let me just say this. So I just want to clarify, because understanding this is, I think, helpful for sorting out some of the district court's rulings. So in the complaint, you've challenged collecting the money without process. I think that is a due process violation. Now, she received some process later, and that doesn't cure the problem, but she received some process later. And collection after that process is not what you're challenging, right? That's flowing from a different, that's flowing from the process she got. We are challenging and would have challenged in the underlying case had our substantive due process and equal protection claims. But in the procedural due process claim, that's challenging, collecting without any process beforehand. Yes, Your Honor. That's exactly right. So the injury for that is you collect it without any process beforehand. And that injury has already happened. That injury is not going on now. It is going on now. It's ongoing every month. They are taking money from her check every month. But I thought we just agreed she received process after. She received an adequate process, but they're collecting it, and collecting it is arbitrary and capricious. Collecting it from her under her particular circumstances in the amount they're collecting it is arbitrary and capricious. It's a violation of her substantive due process, right? Yes, but that's not your procedural due process. That's correct. Okay. Yes. That's just challenging taking it without any process on the front end. Correct, Your Honor. But the substantive due process and the equal protection claims dealt with the actual collection of the money itself. Because, well, let me skip to the qualified immunity argument because that's the... Well, before you go there, let's... After Ms. Talley arguably received due process, after the recoupment process began, there was an administrative hearing? There was an administrative hearing, but the problem with that hearing is that she was not permitted to show any basis for not collecting the money. What the State has argued is that it has no discretion whatsoever about whether to collect. All right. At that point, did you have the availability of an appeal to a state court? We did, but we didn't have a basis to... The only appeal we could have taken is one that says the administrative law judge didn't decide the constitutional issue and didn't decide the issue of whether the agency had to show some non-arbitrary reason to collect all of this money as opposed to a portion of it or forgive it. So why couldn't you have raised all the issues you raised now before a state court after the administrative law judge? Well, if you look at the state decisions, they have not dealt... None of them have dealt with the constitutional due process issue. And so we did not feel like that... We felt like the decisions, the precedent, the state court precedents would not be interpreting our arguments under... We thought the federal court was the best place to get a federal interpretation of what federal due process was required. Well, we have lots of places in the law where we look, for lack of a better word, to exhaustion of remedies. And if you had a remedy in the state court, even if you might have lost, I'm not sure why you would not have pursued that and why you weren't required to at least try that. Well, we don't believe we had a remedy in the state court, Your Honor, because the state courts are deciding the meaning of the federal constitution and the administrative law judge in that case declined to decide the federal constitutional issue. Well, wouldn't you have made the claim that that was error? We could have made a claim that was error, but there's lots of precedent in state court that says, yes, the jurisdiction of the Office of Administrative Appearance is limited. But we don't have a state court decision in your case that says anything. Well, no, we don't, Your Honor, but if we had taken that appeal, that would have had res judicata collateral estoppel effect on our ability to pursue our remedies in federal court. So it was better. Section 1983 does not require us to go through the administrative remedies available to us in state court and then judicial review of administrative decisions. Section 1983 permits us to bring our constitutional claims directly to the district court for trial and to this court. And the problem here is that we got no trial, and the district court never decided whether the process given Ms. Talley was sufficient. And that's really the issue we believe should be sent back to the district court, is to make findings of fact on the notice and the opportunity to be heard over her, because our contention is that there was none. If you look at the joint appendix and you look at the notice that Ms. Talley got, Ms. Talley was only ever told, and Ms. Talley and all of the other individuals, are only ever told we're going to take this money from you. You owe us this money and we're going to take it from you. They are never affirmatively offered any opportunity to be heard. The only reason Ms. Talley even got her post-deprivation hearing in this case is because she had a lawyer who pushed for that. And then the agency finally said, okay, we're going to issue a final agency decision. Once they issue a, quote, final agency decision, then you can file your case in OAH. None of the other individuals ever got that far because they didn't have a lawyer and nobody pushed for a final decision. So is that your equal protection claim that some people who have a lawyer and push harder get better treatment for this recoupment than those that don't? That's part of it, Your Honor. The other part of it is that in the limited discovery we were able to get in the Office of Administrative Hearings, they produced a list of people and the amounts of recoupment that they do vary greatly in percentages. And it's not clear why some people only are required to give up 10 percent and some people are only required to give up 50 percent. And that's if they continue to have money coming in from the state. But under that, either one of those arguments, Ms. Talley got the better treatment compared to others, correct? She had a lawyer and pushed it, so she was on the good side of any disparate treatment. And she also only had, at least after the initial reduction, they reduced it to 10 percent, so she would be on the better end of the percentage recouped, correct? That's correct, Your Honor. I would say with this caveat, initially they told Ms. Talley, you know, we can take 100 percent of your retirement income. Right. But are you aware of any authority from an equal protection standpoint that the person who gets the better treatment as opposed to the worst treatment has an equal protection claim? No, Your Honor, but I will tell you that the other three plaintiffs, even though the motion to amend was denied, did not get the better treatment. And so they have, I would say at least they have viable equal protection claims. That might be a claim they have, is what you're saying? Yes, Your Honor. Also, though, the whole process. We don't know whether there are parties before the court now or not. I'm sorry, Your Honor. We don't know whether those other plaintiffs are parties that are before us now or not. That depends on whether or not the order entered denying the motion to amend is appropriate. We don't know that. We did say it was not appropriate. We did appeal the denial of the motion to amend. Right. I know you did. The district court said, well, one of the reasons I'm doing this is you were late. We had a scheduling order. You missed it. You were several months late in doing that, and you haven't given us a good cause, haven't given the district court a good cause explanation as to why you were late. Yes, Your Honor. I will say this. Even if that motion to amend is not found to be erroneous, these three plaintiffs can still file a claim today. But they're not before us now. Yes, it's not before you now. But the equal protection issue not only pertains to the way in which people are treated, it pertains to the fact that there is an absolute lack of any procedure saying to people how they're going to be treated and how these amounts are going to be calculated, which really dovetails into the substantive due process issue. I was going to say that sounds more like a due process argument than an equal protection argument. I'm sorry? That sounds more like a due process argument than an equal protection argument. A substantive due process argument. An arbitrary and capricious argument that the state is acting arbitrarily and capriciously and not having any rules that govern the whole recoupment process. If the court's interested, I will be glad to talk about why the qualified immunity argument used to dismiss the complaint was erroneous. The court relied on Swanson, and Swanson is a case that dealt with a revenue change in the revenue statute and a decision by the United States Supreme Court which came down two weeks later. The plaintiffs in that case filed a lawsuit under Section 1983, and the court said there was no clearly established law. That's very different from the facts in this case governing procedural due process because those cases are, they go back to 1951 where the United States Supreme Court said in Mullane that the opportunity to be heard is the hallmark of due process. What's the most factually analogous case you have that says that the right you assert to have been violated is clearly established? If you could just give me the case. Do you want factually or legally? I just want the name of the case. I'm torn between two cases, Your Honor. You can give them to me both. Todman and Snyder. Excuse me? Todman. Okay. This court's decision in Todman. Okay. And Snyder. But I also think Presley is very instructive, too. It's hard to choose between those three cases. Okay. Thank you. The law was clearly established in Mullane, in Goldberg, in Matthews v. Eldridge, in Atkins v. Parker. The law in North Carolina was also clearly established in Bailey where the North Carolina Supreme Court said that these kind of benefits are property rights in 2020. So how does that clearly establish that if the retirement authorities have a statute that says we're to recoup money that was improperly paid and they're directed to do that and they're following that statute, even if the statute is determined to be wrong for the reasons that you raise, why is that clearly established to them? Because, first of all, the statute, it's clearly established that under the facts here where you're collecting recoupments of government benefits that notice and an opportunity is required to be provided. But it's also clear, it's also the statutes that the court relied on and the appellees rely on to say that they have to recoup these. They say we have to recoup these and we're not required to provide due process. And in the, these statutes, first of all, don't say that. And second of all, Todman, the court has said that, and it was exactly the same argument. Wrap up if you can. I'm sorry? Wrap up if you can because you're over time.  Thank you, Your Honor. In Todman, the court says if the state judiciary is not providing sufficient notice of the city's ordinance, the city must step in to provide that notice if it wants its ordinance to survive a due process challenge. It's the same issue here. What the state cannot do is evade the requirements of the due process clause by throwing up its hands and saying we don't make the notice for you. So it's qualified immunity at issue in that case? Yes, qualified immunity is the reason why the district court dismissed the last procedural due process claim. No, I mean in the one you were just reciting. Is that a qualified immunity case? No, Your Honor, that's not a qualified. That's Todman. But the statutes in this case say that the recoveries can only be recouped to the extent allowed by law, that the state has to use lawful means. And, in fact, in one of the statutes it says the state's limited. Counsel, you've got some time left on rebuttal, but we've let you go over several minutes. I have two minutes and 26 seconds left? No. No. You're over. Oh, I'm over. Oh, I'm sorry, Your Honor. Thank you. It's been a while since I've been here. Thank you very much. All right. We'll now hear on behalf of the appellee, and I'm not going to attempt your name. Why don't you tell us what it is? Thank you, Your Honor. May it please the Court, my name is Olga Visotskaya DeBritto, and my colleague, Mary Scruggs, Special Deputy Attorney General, and I are honored to represent the North Carolina Teachers and State Employees Retirement System. I would like to jump right into the colloquy that I have heard courts have with opposing counsel about the due process, procedural due process specifically, that has occurred here. And I think both Judge Rushing and Judge Adgee asked questions about the post-deprivation remedies that was provided to plaintiffs in this case. And the remedy was provided under Chapter 150B of the North Carolina General Statutes. It's a process at the Office of the Administrative Hearings. That decision was issued concerning these recoupments that the retirement system attempted to recover from plaintiffs, and the decision affirmed the validity of the recoupment process that was used. It is now an established set of facts that the amount of recoupment was correct, and that's joint appendix pages 62 through 67, and that the process that was used by the retirement system was correct. So is it your view that Ms. Talley does not contest the amount of the overpayment now? Absolutely. And joint appendix against pages 62 through 67 uncontested findings of fact from the Office of Administrative Hearing that confirmed that the system overpaid $86,000, and that confirmed the process of recoupment that was being used by the retirement system was correct. Now, the questions were also asked about, and my opposing counsel— So she wanted to contest that amount. Is it your view that she would have been required to seek an appeal to the whatever state court there would be that would hear an administrative appeal? Actually, Your Honor, that contestation could have taken place within the Office of Administrative Hearings. Plaintiffs are allowed to present expert testimony. Plaintiffs are allowed to give their own testimony about the recovery or about the payments. So all of that could have played out at the Office of Administrative Hearings. Right, but once the administrative law judge makes a decision and says, all right, you owe $86,000, and the recipient beneficiary says, no, I still disagree, I only owe $10,000, what's their remedy at that point? They think that decision was wrong. Yes, so the remedy is to appeal it through a petition for judicial review under Chapter 150B to the Superior Court in North Carolina, and then the next steps would be appealing that decision if plaintiffs still disagree to the Court of Appeals, and then to the Supreme Court on discretionary review, possibly too. And one of the issues that the opposing counsel has raised is that constitutionality, the due process, for example, could not have been considered by the administrative forum. However, Wilson County Board of Education case that we cited in our brief is clear that once plaintiffs appeals the decision from the Office of Administrative Hearings to the Superior Court, Superior Court is free to decide the constitutionality issues. And the state courts in North Carolina have decided 1983 claims before. So there was a complete remedy that included potentiality of an appeal on the constitutional issues that was available to plaintiffs. Plaintiffs selected not to pursue it. So a plaintiff should not be allowed now to bring this claim to this court because that remedy was simply not pursued by her. So that, talking about the post-deprivation remedy that the state has provided to plaintiffs. My response to that was, well, this is a 1983 claim, and I can bring it to the federal court if I want. I'm not required to pursue any state remedies. Generally, that would be correct, except the administrative, that, I mean, generally you could sue, you could select your forum. You could sue in state court or you could sue in the federal court. Here plaintiffs did sue in the administrative forum and had an opportunity to pursue that claim further up the chain through the judicial remedies available in the Superior Court and the Court of Appeals in state courts. So is it your argument that because Ms. Talley didn't appeal to the North Carolina state court, she's not exhausted her remedies and can't bring this case? Our argument is different. It's not centering on exhaustion. It just shows it goes to the heart of the procedural due process argument. And because that remedy was available to her. You're saying all that indicates the process that's available to someone who has a grievance on this issue. That's exactly right. And because it was available to her, the state has satisfied the procedural due process requirement. The minimum constitutional requirements for procedural due process are satisfied. But I also wanted to guide the court to an issue about a very extensive attempt in this case that the state has made to reach out to Ms. Talley before the deprivation has occurred. Some of it is before you in the joint appendix, but some of it was not included in the joint appendix, but we cited to it in our brief, and it's docket entry 4-3, which is part of the retirement system's retirement file that Ms. Talley had, and it was attached to her complaint to federal court. So court had that record in front of it. There were multiple efforts that the retirement system has made to inform Ms. Talley, first of all, of the forthcoming recoupments and the errors that occurred, starting from August 2018, and that's page 3 and 4 of docket entry 4-3 before the court. There was a written correspondence informing of the error and that her file being reviewed. There was also a written correspondence from the system in November 2018. That's many months before the recoupment first started, saying that her retirement account was being reviewed, providing a phone number for a representative from the retirement system for Ms. Talley to reach out to to discuss her options. Then in March of 2019, still multiple months beforehand, there were multiple telephone calls placed to Ms. Talley from one of the representatives of the retirement system, again, in an effort to discuss recoupment options, and then multiple written correspondence was mailed before the first recoupment started on April 25. Before the recoupment started, the state actually also provided an informal agency review and issued a lengthy letter, six-page letter, explaining what happened, showing the calculations of the overpayments, and that's district entry 4-3, pages 21 through 25. That letter is there, and again, inviting Ms. Talley to reach out to discuss the options. That conversation about discussing options did not happen until later in August, at which point the state reduced the original recoupment. So your arguments, counsel, here are that there was adequate pre-deprivation process, which the district court found to the contrary and decided, nevertheless, on qualified immunity. Right. Is this argument, I'm just trying to think how it fits in. I understand what you're saying. My question, though, is you didn't cross-appeal, did you, the district court's findings, so you're not really appealing that. You're just saying it sounds like that under qualified immunity you can decide this on prong one or prong two. This seems like a prong one argument. Your Honor, we are the IPLE here, and we are asking for the judgment to be affirmed, and as we understand these precedents, these courts' precedent, IPLEs could argue for other reasons that appear in the record in affirmation of the judgment. So there are multiple reasons on which you could affirm this court's decision. Even if the court got the pre-deprivation remedy wrong, which we argue it did, that a sound deprivation remedy was provided, this court could affirm on that basis. And for purposes of procedural due process, we think under Matthews and under McClelland precedents in this court, pre-deprivation combined with post-deprivation remedy requires a dismissal of the procedural due process claim. So if I'm understanding what you've been arguing the last few minutes is there's, you correct me if I'm stating your argument incorrectly, that there's evidence in the record that the district court did not consider or did not document in its order that outlines additional pre-deprivation due process. Is that what you were arguing? That's what we are arguing. And we are arguing that the court also misunderstood the kind of remedy in total that the state provided. But yes, Your Honor, in short. So if that argument were accepted and were found as a matter of law, that all that together was adequate pre-deprivation due process, then we wouldn't get to a qualified immunity argument. You do not need to get to that argument. I just want to make sure I understood your argument. That's right. We do think that the qualified immunity argument is also appropriate, but you don't need to get there. It could be affirmed on the basis that there was no appropriately stated due procedural due process claim. I also wanted to get to a point that Judge Rushing has raised with opposing counsel about what was the ongoing violation at the time when this lawsuit was filed under Ex parte Young. Because what we have here are the board members sued in their individual and official capacities under Section 1983. And that requires a life-ongoing constitutional violation at the time of the institution of a lawsuit. At the time this lawsuit has been filed, the post-deprivation remedy was provided two years before the filing of the lawsuit. So we think the district court was correct when it determined that there was no ongoing violation, and on that basis dismissed. Just to make sure I understand the record, the administrative law hearing was two years before the current suit was filed. That's correct. The decision in the administrative law hearing was reached, I believe, in February of 2020. This lawsuit has not been filed until 2022, and that should be your joint appendix, page 67, I think was the date of that decision. But if the court were to agree with our argument that there was no ongoing violation by the time this federal lawsuit was filed, all of the claims the plaintiff is raising would go away based on that rationale, substantive due process, procedural due process, and equal protection violation as well. So could, would, I mean, accepting that with the, I understand that point on the ex parte young, but except if you're right there, would the plaintiff have a claim for any recoupment that was done prior to that hearing? Would not, because in this case, the Office of Administrative Hearings has already determined that the recoupments that were received by plaintiff were done correctly, and plaintiff never appealed those claims up. But let's assume, my question is, assume the hearing, the process after the recoupment started was adequate process, and assume it was not, it was, the process pre-ecoupment was unconstitutional. I know you disagree with that. But if those two things are both assumed, would Ms. Talley have a claim for the amount of the recoupment prior to that later hearing or that later process? So not in federal court and not under ex parte young grounds, and this court in JEMSEC specifically stated that past violations are not redressable in federal court. You have to have a life-ongoing controversy. Right, right, that's the injunction part. I think I get that, but I mean, I guess this goes back to maybe, I guess, the individual capacity members. In theory, there might be one for those, that recoupment, but that's subject to the qualified immunity analysis. It is true that individual capacity claims are subject to qualified immunity, but also the proper way for plaintiff to challenge what she believed was wrongfully taken payments before she received post-deprivation hearing was through that Office of Administrative Hearings proceeding, and then up to the Court of Appeals in North Carolina if she still disagreed. Now it's a matter of law that these recoupments were taken appropriately. It has never been appealed, and there is nothing for this court to determine because the consequences of past violations are different from an ongoing present constitutional violation, and for purposes of ex parte young, you have to have a present ongoing constitutional violation to proceed. The qualified immunity also applies. I think if the court were to get to that issue, Swanson v. Powers is exactly squarely on point. Officials cannot be sued individually simply for enforcing what is very strongly presumed to be a valid state law. This law doesn't actually require them to recoup it a certain way, right? Tally makes a valid point, right, that the state law requires the retirement system to recoup the funds, but it doesn't specify you have to recoup them without any process or without certain kinds of pre-deprivation process. But there's still the question of is there any clearly established law putting these officials on notice that this was a violation of her constitutional rights? What's your response to her best cases that she flagged for us? So the best cases, and it's a matter of state law because our state courts actually have interpreted 135-9, which is your recoupment statute in North Carolina, and those state cases are Moss v. Retirement System and Trejo v. Retirement System, both cited in our brief. The state courts interpreted 135-9 as having a mandatory recoupment clause, and the retirement system is required to offset from future retirement payments any past found overpayments. That is the state law in North Carolina. So getting back to the issue of qualified immunity, I think it really heavily favors our argument. If the law in North Carolina was that the state is required to offset to use recoupment process, as Moss and Trejo say, then these individuals would absolutely be under no understanding that what they're doing through recoupment is violating a clearly established constitutional right. I think the argument is they should have been on notice that, yes, you can recoup or you have to, but the Constitution requires certain process before you do that. Is there a case on point for a retirement fund recoupment that would have put them on notice of that? So not of that, exactly of opposite, which is Moss and Trejo put them on a notice that they're required to recoup. And then in terms of their understanding, I mean, I think the state law is very clear that what's expected of them is to follow the statute. And it's true that minimum constitutional protections do apply to the recoupment process, and we talked exhaustively about the process that was afforded to plaintiffs here, both pre-deprivation and post-deprivation. So under these set of facts, the board members could not have understood that they're clearly violating the established law. And no case was cited from the opposing side to show the opposite. We cited two state cases that showed that the expectation was that the overpayments would be recouped. So accepting the premise that the state employees are protected when they engage in the recoupment process, is there a different part of that argument that they don't have parameters as to whether in this case they're going to take 50%, in this case they're going to take 10%, and that lack of a parameter is a separate claim, even if they're entitled to do recoupment in some form? So, Your Honor, in this case, the position that the retirement system took was default 50%, so that the retiree still gets to keep a portion of the retirement payment, and then there is room for the retirement system to negotiate. And so the different amounts could be explained by multiple rational reasons, including that the retirees reached out to the retirement system, presented their life circumstances, and were able to receive reductions of the default 50%. That does not create, I don't think, a separate federal claim that could be cognizable under any of the principles cited in the plaintiff's claim. If anything, what that shows is that the retirement system was being flexible and was exercising appropriate discretion. And we asked the court to affirm the district court's dismissal of plaintiff's complaint on various grounds that we have discussed and that were presented in the outbreak. Before you say that, tell us a little bit about the district court's denial of the motion to amend, because an appellant says, well, we have other plaintiffs here. And so was the district court right or wrong on the motion to amend? Absolutely right, Your Honor. And your standard of review is abuse of discretion. There were multiple reasons that the district court correctly cited in its decision to deny the motion to amend. It was filed many months after the court's scheduling order allowed the filing. The motion itself did not contain a good cause that was required under Rule 16. The type of interest the new plaintiffs brought, the purported plaintiffs brought, was different than the type of interest the plaintiff had here. It was contributory death benefit and disability benefit that they had. And even a different board would have to be involved. Local employees governmental board instead of teaser's board would have to be involved. So for all these reasons, multiple reasons, court did not abuse its discretion in denial. All right, thank you very much. Thank you. All right, Ms. Bateman, you have some rebuttal time left. Thank you, Your Honor. I'm going to make this very brief in light of Mike going over, and I apologize for that. State law absolutely provides some authority for the fact that Ms. Talley was subject to recoupment in an amount more than she should have been. State law says that defendants are limited in actions to recover overpayments to the last three years of overpayments. So if they sued Ms. Talley, they could only get three years. If Ms. Talley sued them for underpaying her, she could only get three years. The defendants ignore that limitation on the amount they can collect for overpayments by resorting to the recoupment process. So the recoupment process goes back to the very beginning of any overpayment and collects it forward, resulting in hundreds of thousands of dollars of, quote, overpayments. Finally, in the Pressley case, this court- Let me ask you one point about the recoupment amount. The opposing counsel says that, in effect, the amount is now settled, that it's either collaterally estopped or a res judicata applies based on the administrative law judge's determination of the amount. Well, there is precedent from the United States Supreme Court that says unappealed administrative decisions have no collateral estoppel value. I can't recall the name of that case off the top of my head, but I know it's out there, and I can certainly provide a supplemental memorandum with the name of that case. But that is one of the primary reasons why we didn't appeal that case, because we didn't want there to be any collateral estoppel value in that case, given the paucity of the record, and the fact that the administrative law judge did not consider the fact that state law limits the agency's recovery to three years of overpayments, which they avoid by not suing but using this recoupment process. Pressley, the case decided by this court, says ordinarily pre-deprivation process is required. Absent the necessity of quick action by the state or the impracticality of providing any pre-deprivation process, you have to have- and if you can't show that it's impractical or that quick action is required, a post-deprivation hearing is constitutionally inadequate. So you cited that as your clearly established law when we talked before. Do you have any case dealing with recoupment of an overpayment of a retirement benefit and saying that pre-deprivation process is required for that? I believe that the Califano v. Yamazaki case by the United States Supreme Court is instructive on that issue. It talks about the United States recoupment process, and it talks about both the statutory requirements that the United States has adopted as well as the administrative process that's in place. Well, I'm asking about this specifically in the retirement benefits because Matthews is what we have, and it's useful, but it's fuzzy, and you take the importance of the benefit and you weigh it against the benefits of process, and it's very circumstance-specific, and I'm wondering, without a case on point for these circumstances, how are these officials to know? How is it clearly established? Your Honor, I believe this court's opinion in Kurt v. Commissioner of the Social Security Administration deals directly with the process that's required. In that case, the Social Security Administration was dealing with widespread fraud. So that was Social Security? Social Security, but that's the same thing as state retirement benefits. It's recoupment. All the Social Security cases are on point, and so are the state cases that we decided that have statutes that provide for evaluation of hardship. But I will say the reason that those cases are especially important is because in 135-19, the legislature manifest its intent that the United States Social Security system be the beacon by which North Carolina retirement system operates. In 135-19, the legislature declared the policy, and it says, in order to extend to employees of the state and its political subdivisions the basic protection accorded to others by the old age and survivor's insurance system embodied in the Social Security Act, it is hereby declared to be the policy of the legislature, subject to the limitations of this article, that such steps be taken to provide such protection to employees of the state and local governments on as broad a basis as is permitted under applicable federal law. So all cases deciding anything related to the recoupment process under the Social Security Administration, both retirement system cases and Social Security disability cases, are applicable to this case and this retirement system and this recoupment process. Do you have anything else you want to tell us? I'm sorry, Your Honor. Do you have anything else you want to tell us? No, thank you, Your Honor, and thank you for hearing this case. Well, we thank both counsel for their arguments, and we're going to come down and greet counsel, and first we'd ask the clerk to adjourn court for the day. This honorable court stays adjourned until tomorrow morning. God save the United States and this honorable court.
judges: G. Steven Agee, A. Marvin Quattlebaum Jr., Allison J. Rushing